```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

|                  |   |                       |
|------------------|---|-----------------------|
| UNITED STATES    | : |                       |
|                  | : |                       |
| v.               | : | CIV. NO. 3:12CR117 (WWE) |
|                  | : |                       |
| PAPADAKOS ET AL  | : |                       |

<u>RULING ON PRETRIAL MOTIONS</u>

Pending before the Court are various pretrial motions filed by several defendants in a multi-defendant narcotics case. The pending motions largely seek discovery from the government, and overlap in the relief requested. The government has filed an omnibus response in opposition. [Doc. #312].

**Background**

On June 14, 2012, following a long-term investigation that included the use of court-authorized wiretaps, a grand jury returned a multi-count superseding indictment charging sixteen (16) individuals with various federal narcotics offenses, including conspiracy to possess with intent to distribute 500 grams or more of cocaine, Oxycodone, and marijuana in violation of 21 U.S.C. § 846 (possession and distribution of narcotics).[1] Defendants Demetrios Papadakos ("D. Papadakos"), Ioannis Papachristou ("Papachristou"), Domenick Ribustello

---

[1] Several defendants have pleaded guilty since June.

1

("Ribustello"), Julio Brinez ("Brinez")[2], Savvas Giannoglou ("Giannoglou"), George Tkaczyk, Jr. ("Tkaczyk"), Efstrati Papadakos ("E. Papadakos"), and James Lyons ("Lyons")[3] filed various standard discovery and pre-trial motions.[4]

A. **Defendant Ribustello's Motion to Dismiss, or in the alternative, Motion for Bill of Particulars [Doc. #215] and Defendants Papachristou, D. Papadakos, and Giannoglou's Motions for Bill of Particulars [Doc. ##171, 222, 252]**

Defendant Ribustello argues that count one of the superseding indictment is defective because it fails to provide him with notice of the particular manner and means by which the conspiracy allegedly operated, of the specific acts allegedly committed in furtherance of the conspiracy, or the roles of the various co-conspirators. Defendant Ribustello's motion contends that the government fails to provide any information about the elements of the conspiracy and how the conduct of defendant

---

[2] Defendant Brinez pleaded guilty on January 3, 2013. [Doc. #352]. Accordingly, the Court **DENIES AS MOOT** the following motions filed prior to Brinez entering a guilty plea: Motion for Bill of Particulars **[Doc. #247]**; Motion for Discovery and Pre-trial Hearing re: Officer "Experts" **[Doc. #248]**; Motion for Discovery Request for Notice of Intention to Use Rule 404(b) Evidence **[Doc. #250]**; and Motion for Disclosure of statements of Co-Conspirators **[Doc. #251]**.
[3] Defendant Lyons pleaded guilty on October 23, 2012. [Doc. #290]. Accordingly, the Court **DENIES AS MOOT** the following motions filed prior to Lyons entering a guilty plea: Motion to Dismiss Indictment **[Doc. #180]**; Motion for Disclosure of Expert Witness **[Doc. #188]**; and Motion for Production of Agent's Notes **[Doc. #189]**.
[4] Judge Eginton will rule on the Motions to Suppress and Motions to Sever.

2

constituted a conspiracy to distribute and possess narcotics. However, the Second Circuit has held that an indictment under 18 U.S.C. §846 "is sufficient if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege any specific overt act in furtherance of the conspiracy." United States v. Bermudez, 526 F.2d 89, 94 (2d Cir. 1975). The superseding indictment here includes all of these allegations, and thus is sufficiently specific.

Defendant Ribustello further argues that if count one is not dismissed, he is entitled to a bill of particulars. Defendants Papachristou, D. Papadakos, and Giannoglou have also filed motions for bills of particulars with respect to the allegations set forth in count one of the superseding indictment. The defendants maintain that they are entitled to a bill of particulars identifying the basis for, *inter alia*, the allegation of conspiracy, the dates on which each co-conspirator joined the conspiracy, all overt acts not identified in the indictment, and each defendant's alleged participation in each overt act.

The decision to grant or deny a request for a bill of particulars is "reviewed for an abuse of discretion." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). "A bill of

particulars is required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." Id. (citation omitted). As set forth above, the superseding indictment was satisfactory in this respect.

"The proper scope and function of a bill of particulars is not to obtain disclosure of evidence or witnesses to be offered by the government at trial, but to minimize surprise, to enable movant to obtain such ultimate facts as are needed to prepare his defense, and to permit a defendant successfully to plead double jeopardy if he should be prosecuted later for the same offense." United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987) (citing cases). Further, "[b]ecause a bill of particulars confines the government's proof to particulars furnished, requests for a bill of particulars should not be granted where the consequence would be to restrict unduly the government's ability to present its case." Id. (citing cases). "The test is not whether the particulars sought would be _useful_ to the defense. Rather a more appropriate inquiry is whether the information in question is _necessary_ to the defense." United States v. Guerrerio, 670 F. Supp. 1215, 1224 (S.D.N.Y. 1987) (citations omitted, emphasis in original).

4

"[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." Walsh, 194 F.3d at 47. Here, the government has provided defendants with "copious amounts of discovery" constituting a "wealth of evidentiary detail" including, but not limited to, wiretap applications, arrest reports, affidavits and orders, DEA-6 forms, lab reports, copies of calls and text messages intercepted during the wiretap phase of the underlying investigation, and draft transcripts of the content of each call and text message created at the time of interception (i.e. line sheets and/or draft transcripts). [Doc. #312, at 6-7]; United States v. Deas, No. 3:07-cr-73 (CFD), 2008 WL 5063903, at *3-4 (D. Conn. Nov. 24, 2008). The Court finds that the government has provided defendants with enough evidence in discovery to prepare their defense. To find otherwise would confine the government's proof to particulars furnished, thereby "restricting unduly the Government's ability to present its case." Feola, 651 F. Supp. at 1132 (citations omitted); Guerrerio, 670 F. Supp. at 1224-25 ("A bill of particulars, however, is not a discovery tool and is not intended to allow defendants a preview of the evidence or the theory of the government's case."). Defendants have not shown that the particulars sought are necessary to their defense.

5

Accordingly, defendant Ribustello's motion for an order dismissing count one of the superseding indictment or, alternatively, for an order directing the government to file a bill of particulars **[Doc. #215]** and defendants Papachristou, D. Papadakos, and Giannoglou's motions for a bill of particulars **[Doc. ##171, 222, 252]** are **DENIED**.

## B. Defendant Tkaczyk's Motion for Disclosure of Brady, Bagley, Giglio and Kyles v. Whitley Discovery [Doc. #265]

Defendant Tkaczyk moves for an order directing the Government to provide early disclosure of numerous documents and information that he contends are due to him under Brady v. Maryland, 373 U.S. 83 (1963), United States v. Bagley, 473 U.S. 667 (1985), United States v. Giglio, 405 U.S. 150 (1972) and Kyles v. Whitley, 514 U.S. 419 (1995).[5] Specifically, defendant Tkaczyk seeks discovery largely addressing the credibility and

---

[5] Bagley and Whitley expand upon the doctrine announced in Brady. In Bagley, the Supreme Court "disavowed any difference between exculpatory and impeachment evidence for Brady purposes […] Bagley held that regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles, 514 U.S. at 433-34 (quoting Bagley, 473 U.S. at 682). Kyles further expands upon the Brady and Bagley doctrines and holds in part that, in determining whether undisclosed evidence is material in violation of Brady, the cumulative effect of all suppressed evidence favorable to the defendant should be considered rather than considering each item of evidence individually. 514 U.S. at 436-37. Accordingly, for purposes of this section, references to "Brady materials" shall collectively refer to Brady, Bagley and Whitley materials.

motivations of the government's cooperating witnesses as well as any exculpatory information in the government's possession.

The government responds that much of the information sought by defendant is not discoverable.[6] However, to the extent that defendant's motion otherwise relates to Brady and Giglio materials, the government responds that with respect to Brady materials, it has disclosed all information known to it that could be considered exculpatory or bearing on defendant's innocence versus guilt. [Doc. #312, at 14]. With respect to Giglio materials, the government represents that it will provide discovery with respect to any impeachment material, such as criminal histories, cooperation agreements, and details of any consideration paid or bestowed upon the witnesses, once the list of witnesses is confirmed for trial. [Id. at 15]. The government further states that if it learns of any additional Brady and Giglio materials not already disclosed, that the government will disclose these materials promptly. [Id].

---

[6] The government refers to paragraphs 2a-h of defendant's motion which seek, *inter alia*, the identity and motivations of the government's cooperating witnesses. [Doc. #265, ¶2a-5]. For the reasons set forth in section G, *infra*, such information is not discoverable absent the defendant's showing he "will be deprived of his right to a fair trial," absent possessing such information. See United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997). Defendant has failed to make any such showing in his motion.

7

Accordingly, defendant Tkaczyk's motion **[Doc. #265]** is **DENIED** in light of the government's representations.

## C. Defendant Tkaczyk's Motion for Jencks Act Material [Doc. #266]

Defendant Tkaczyk moves, pursuant to the Jenks Act, 18 U.S.C. § 3500, for production of statements of the government's witnesses "at this time." [Doc. #266]. The government responds that numerous reports and affidavits belonging to the government's witnesses have already been produced, and therefore defendant's motion should be denied on its merits. [Doc. #312, at 15-16].

Under the Jenks Act, 18 U.S.C. §3500(a), "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." The Second Circuit has consistently held that a district court's "power to order pretrial disclosure is constrained by the Jencks Act," and that the district court may not order advance disclosure inconsistent with the Jencks act itself. See United States v. Coppa, 267 F.3d 132, 145-46 (2d Cir. 2001) (reversing district court's decision ordering early disclosure of Jencks Act material); see also United States v. Sebastian, 497 F.2d 1267, 1268-69 (2d Cir.

1974); United States v. Percevault, 490 F.2d 126, 129 (2d Cir. 1974) (finding that "the district court did not have statutory authority to compel disclosure [of Jencks Act material] prior to trial over the government's objection").

Defendant Tkaczyk fails to offer any controlling authority to override the Jencks Act. Indeed, the Court is not persuaded by, or required to follow, the cases cited by defendant. Moreover, the government has already produced numerous reports and affidavits relating to government witnesses. This motion for Jenks Act materials **[Doc. #266]** is **DENIED**.

### D. Request for Notice of Intention to Use Evidence of Prior Misconduct, Fed. R. Evid. 404(b) [Doc. ##224, 263]

Defendants D. Papadakos and E. Papadakos move for disclosure and notice of evidence of prior misconduct which the government intends to use in its case in chief. The government states that, "[a]t this time, the Government does not intend to introduce any 404(b) evidence or other 'prior misconduct' evidence against any defendant in its case-in-chief." [Doc. #312, at 19]. Each defendant has been provided with a copy of his criminal history and has been advised that, depending on the evolution of circumstances approaching trial, any criminal conviction in their criminal histories may be used as 404(b) evidence.

9

Accordingly, defendants D. Papadakos and E. Papadakos's motions **[Doc. ##224, 263]** are **DENIED** as moot in light of the government's representations, and on this record.

### E. Defendant Papachristou's Motion for Production of Agent's Notes [Doc. #170]

Defendant Papachristou moves pursuant to 18 U.S.C. 3500(e), Fed. R. Crim. P. 26.2(f) and Jencks v. United States, 353 U.S. 657 (1957), for "any agents' notes taken of any proffer session or statements made involving himself or any potential witness who will testify at trial pertaining to him be disclosed forthwith." [Doc. #170].

Fed. R. Crim. P. 26.2(a) provides that, "After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and relates to the subject matter of the witness's testimony." For purposes of Rule 26.2, a witness's statement means "(1) a written statement that the witness makes and signs, or otherwise adopts or approves; (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a recording; or (3) the witness's statement to

a grand jury, however taken or recorded, or a transcription of such statement." Fed. R. Crim. P. 26.2(f)(1)-(3).

Fed. R. Crim. P. 16(a)(1)(B)(ii) provides that, upon a defendant's request, the government must produce "the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent . . . ." Under the Jenks Act, 18 U.S.C. §3500(a), no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."

The Second Circuit recognizes that the notes of investigators do not constitute Jencks Act materials as defined by Rule 16. See United States v. Koskerides, 877 F.2d 1129, 1133 (2d Cir. 1989) (finding "the government fully complied with Rule 16(a)(1)(A) by providing appellant with the typewritten memoranda of interviews prepared from the agent's handwritten notes"); United States v. Elusma, 849 F.2d 76, 79 (2d Cir. 1988) (agents need not preserve their handwritten notes of interviews if the agents incorporate them into formal reports), but see,

11

United States v. Ionia Management S.A., No. 3:07cr134 (JBA), 2007 WL 2298570, *1-2 (D. Conn. Aug. 3, 2007) ("[I]t is clear that, pursuant to Rule 16(a)(1)(B)(ii), the Government must produce all of the agents' rough notes of interviews/interrogations conducted with the defendant's employees/agents . . ."); United States v. Stein, 424 F. Supp. 2d 720, 728-29 (S.D.N.Y. 2006) (finding that Koskerides relied on an earlier version of Fed. R. Crim. P. 16, failing to take in to account the 1991 amendment of Rule 16 and ordering the government to produce rough notes taken by government agents during interviews with the moving defendants and ordering preservation of notes taken during interviews with non-moving defendants with production upon request by the non-moving defendants).

Although the agents' notes are not witness statements within the meaning of the Jencks Act, the government nevertheless represents that it will advise the agencies involved in the investigation that, to the extent that such items exist, they should preserve the notes of all witness and/or defendant interviews. [Doc. #312, at 17]. The government further represents that such notes shall be disclosed to the extent that Brady and Giglio require. [Id.]. Finally, defendant

12

Papachristou fails to provide any authority to override the Jencks Act.

Accordingly, defendant Papachristou's motion for production of agent's notes **[Doc. #170]** is **DENIED**.

F. **Motions for Disclosure of Statements of Co-Conspirators [Doc. ## 172, 223, 257, 264]**

Defendants Papachristou, D. Papadakos, Giannoglou and E. Papadakos move for disclosure of the identity and substance of those co-conspirators statements that the government intends to use at trial. It is established in the Second Circuit that co-conspirator statements are not discoverable. United States v. Percevault, 490 F.2d 126 (2d Cir. 1974)(finding Jencks Act, 18 U.S.C. §3500, prohibited the disclosure of such statements prior to the declarants' testimony in the government's case-in-chief and disclosure is not compelled by Fed. R. Crim. P. 16(a)); United States v. Shyne, 617 F.3d 103, 107-8 (2d Cir. 2010) (finding Fed. R. Evid 806 does not trump the "express language of the Jencks Act which states that no disclosure is warranted until 'said witness has testified on direct examination in the trial of the case.'"). Moreover, the government has already disclosed to defendants co-conspirator statements intercepted during the wiretap phase of the investigation. Defendants do not direct the Court to any Second Circuit cases which support their argument under Fed. R. Evid 801(d)(2)(E).

Accordingly, defendants' motions for disclosure of statements of co-Conspirators **[Doc. ##172, 223, 257, 264]** are **DENIED**.

## G. Defendants D. Papadakos and Giannoglou's Motions for Disclosure of Confidential Informants and Disclosure of Confidential Exculpatory Evidence Concerning Use of Confidential Sources [Doc. ##245, 259]

Defendants D. Papadakos and Gianngolou seek an order directing the government to furnish defendants with certain information concerning the use of informants, confidential sources, sources of information, infiltrators and cooperating individuals who participated in any way or who are material witnesses to the events charged in the superseding indictment. [Doc. # 245, at 1-2; Doc. #259, at 1-2]. The government contends that defendants' motions fail as a matter of law because defendants have not made the requisite showing to overcome the informer privilege. [Doc. #312, at 21]. The government further represents that in its initial discovery letter, defense counsel was informed that,

> "[t]here are currently three cooperating witnesses, identified as CW-1, CW-2 and CW-3 in the enclosed wire affidavits", explaining that only CW-1 and CW-2 might testify and that "CW-1 has a pending case for which he/she hopes to receive some benefit as a result of the cooperation" and "C-2 received financial renumeration for his/her cooperation." The Government further explained that, "[w]ith the exception of the above, there currently exist no payments, promises of immunity, leniency or

>     preferential treatment made to prospective
>     Government witnesses in this case.

[Doc. #312, at 22]. The government moreover represents that, to the extent it calls any of these confidential witnesses to testify at trial, the government will comply with its discovery obligations thirty (30) days prior to the commencement of trial. [Id. at 23].

Other than moving for the disclosure of information concerning the use of informants, confidential sources, sources of information, infiltrators and cooperating witnesses, defendants have not undertaken the burden of demonstrating that they "will be deprived of his right to a fair trial" absent being provided with that information sooner. See Fields, 113 F.3d at 324 ("Disclosure is a matter which lies within the sound disclosure of the district court."); Rovario v. United States, 353 U.S. 53, 60-61 (1957) (The government is not generally required to disclose the identity of confidential informants). "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." Fields, 113 F.3d at 324; see also U.S. v. Jiminez, 789 F.2d 167, 170 (2d

Cir. 1986) (citations omitted) (on the issue of disclosing the identity of confidential informants, "the defendant has the heavy burden of showing that disclosure is 'essential to the defense'.").

Accordingly, defendants D. Papadakos and Giannoglou's Motions for Disclosure of Confidential Informants and Disclosure of Confidential Exculpatory Evidence **[Doc. ##245, 259]** are **DENIED** on the current record.

### H. Defendants Giannoglou and Papachristou's Motions for Disclosure of Expert Witnesses [Doc. ##173, 255]

Defendants Giannoglou and Papachristou [Doc. ##173, 255] move for disclosure of expert witnesses the government intends to call at trial, including any use of "officer expert" testimony on terminology contained within telephone transcripts. The defendants contend that the Second Circuit prohibits the use of such "officer expert" testimony at trial. [Doc. #173-1, at 1; Doc. #256, at 1]. The government represents that in its discovery letters dated July 10, 2012 and July 17, 2012, it informed defendants that the government planned to comply with Fed. R. Crim. P. 16(a)(1)(E) by notifying defendants of the name of any expert that the government intends to call at trial and providing a summary of expert's opinion and qualifications in a timely fashion after this information becomes available. [Doc. #312, at 24].

16

The government states that it intends to call at trial DEA chemists who analyzed purchased or seized narcotics in this case, and a DEA special agent to provide testimony concerning the nature and methodology of street drug distribution. [Id.]. The government represents that, with respect to the chemists, it has already disclosed two lab reports that identify the chemists who conducted the narcotics analysis, and will disclose all other lab reports as they become available. [Id.]. Moreover, the government represents that as soon as it ascertains which defendants are proceeding to trial, it will be able to identify with more particularity the drug exhibits that will be offered into evidence and the chemists testifying. [Id.]. At this time, the government represents it will provide the defendants with the chemists' qualifications. [Id.]. As to the DEA special agent(s) identified in the government's initial discovery letter, the government represents that it will provide their names, qualifications and summaries of their anticipated testimonies "well in advance of trial". [Doc. #312, at 24].

Accordingly, defendants' Motions for Disclosure of Expert Witnesses **[Doc. ##173, 255]** are **GRANTED** in that the government represents that it shall disclose to defendants: the chemists' lab reports as they become available; the chemists' qualifications when the government determines which defendants

17

are proceeding to trial; and the names, qualifications and summaries of anticipated testimonies of the DEA special agent(s) in advance of trial.[7]

## I. Defendant Ribustello's Motion to Strike [Doc. #216]

Defendant Ribustello's Motion to Strike as Surplusage "Domenick Ribustello a.k.a 'D'" from the superseding indictment **[Doc. #216]** is **GRANTED** in light of the Government's consent and agreement to same [Doc. #312, at 57]. Any reference to defendant Ribustello as "Domenick Ribustello, a.k.a. D" is hereby stricken from the superseding indictment.

## CONCLUSION

For the reasons stated, defendant Ribustello's motion for an order dismissing count one of the superseding indictment or, alternatively, for an order directing the government to file a bill of particulars **[Doc. #215]**, and defendants Papachristou, D. Papadakos, and Giannoglou's motions for a bill of particulars **[Doc. ##171, 222, 252]** are **DENIED**. The ruling concerning **Doc. ##171, 222,** and **252** is a Recommended Ruling. Any objections to

---

[7] In their supporting memorandums [Doc. ## 173-1, 256], defendants suggest that the Court should preclude officer expert testimony under U.S. v. Mejia, 573 F.3d 179 (2d Cir. 2008). The Court notes, however, that the relief sought in the pending motions, and accompanying memoranda, only seek disclosure of the government's expected expert witnesses. Moreover, defendants filed motions in limine [Doc. ## 174, 253] seeking to preclude the officer expert testimony at issue. As such, only the disclosure of the government's expert witnesses shall be addressed here.

this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of receiving this order. Failure to object with fourteen (14) days may preclude appellate review. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 72.2 of the Local Rules for United States Magistrate Judges; Small v. Secretary of H.H.S., 892 F. 2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F. 3d 566, 569 (2d Cir. 1995).

Defendant Tkaczk's Motion for Brady, Giglio, Bagley, and Whitley materials **[Doc. #265]** is **DENIED** in light of the government's representation.

Defendant Tkaczyk's Motion for Jenks Act Materials **[Doc. #266]** is **DENIED**. Defendants D. Papadakos and E. Papadakos's Motions for Notice of Intention to Use Evidence of Prior Misconduct, Fed. R. Evid. 404(b)**[Doc. ##224, 263]** are **DENIED** as moot in light of the government's representations, and on the current record.

Defendant Papachristou's Motion for Production of Agent's Notes **[Doc. #170]** is **DENIED.** Defendants' Motions for Disclosure of Statements of Co-Conspirators **[Doc. ##172, 223, 257, 264]** are **DENIED.** Defendants D. Papadakos and Giannoglou's Motions for Disclosure of Confidential Informants and Disclosure of

Confidential Exculpatory Evidence **[Doc. ##245, 259]** are **DENIED** on the current record.

Defendants' Motions for Disclosure of Expert Witnesses **[Doc. ##173, 255]** are **GRANTED** based on the government's representations that it shall disclose to defendants: the chemists' lab reports as they become available; the chemists' qualifications when the government determines which defendants are proceeding to trial; and the names, qualifications and summaries of anticipated testimonies of the DEA special agent(s) in advance of trial.  Defendant Ribustello's Motion to Strike as Surplusage "Domenick Ribustello a.k.a 'D'" from the superseding indictment **[Doc. #216]** is **GRANTED** in light of the Government's consent and agreement to same.

Except as noted above, this is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 18th day of January 2013.

/s/<br>
HOLLY B. FITZSIMMONS<br>
UNITED STATES MAGISTRATE JUDGE